Good morning, may it please the court. My name is Eitan Kaslyanich. I'm representing Gail Craig in this appeal. Let me jump right to the reversible errors here. The biggest error by the ALJ involved her treatment of the mental health evaluations, the psychological evaluations from Dr. Wheeler and Dr. Kruger. So the ALJ could not reject this evidence without stating at least legitimate reasons for doing so. The ALJ stated four reasons for rejecting Dr. Wheeler's opinion. None of the reasons are legitimate. One of them in particular, her statement that her conclusions were based predominantly on the claimant's subjective complaints while he was attempting to qualify for state benefits. There's no doubt that when she reviewed her evaluation in its entirety, she noted his subjective complaints, but she listed a lot of clinical findings and observations that support her opinion. And it's very significant here that the ALJ disregarded those clinical findings, those objective findings and observations. The same is true with Dr. Kruger's evaluation which was about one year later. The ALJ gave two reasons for rejecting Dr. Kruger's opinion. One of the reasons was that it was based mostly on the claimant's subjective complaints as indicated by few mental health treatment records in the evidence. He never got mental health treatment. He was living in an isolated rural area, almost never leaving his home, avoiding society. He was not getting mental health treatment. But that fact alone is not a legitimate basis for discrediting Dr. Kruger's opinion. Also Dr. Kruger's opinion, Dr. Kruger, like Dr. Wheeler, described clinical objective findings, his observations of what he saw. I understand what you're arguing, but given the conflict and the limitations found by Mr. Craig's mental health doctors, why couldn't the ALJ decide that I think it was Dr. Burke and Dr. Robinson's limitations were more appropriate? Well, she could have decided that if she stated legitimate reasons for rejecting Dr. Kruger's opinion and Dr. Wheeler's opinion. She gave four reasons with Dr. Wheeler, none of which were legitimate, and two reasons with Dr. Kruger, neither of which was legitimate. One I want you to finish, but I just want to clarify for myself that of these four doctors, three of them were examining doctors, and one was a non-examining doctor, and none were treating doctors. Is that right? That's correct. Okay, go ahead. Please finish. Back to Dr. Kruger, the second reason she gave for rejecting Dr. Kruger's opinion was that his evaluation contained no objective testing in support of its conclusions. It did contain objective testing. The ALJ didn't notice it. So neither of her reasons for rejecting his opinion are legitimate. Back to the third doctor, Dr. Burke, who was brought in by Social Security to evaluate him, to evaluate Craig, and Dr. Burke, the ALJ gave significant weight to his opinion, but didn't give any reason to discredit his opinion that he couldn't currently really function in a workplace environment dealing with co-workers and supervisors. It would take him some time to develop that ability. But in any event, it's not enough that Dr. Burke's opinion contradicts those other two opinions. The ALJ can't just say I'm giving him more weight because it's contradicted. The ALJ's got to give a reason for why she's discrediting Dr. Wheeler's and Dr. Kruger's opinions, and none of her reasons were legitimate. Back on to the fourth psychologist, that was Dr. Robinson. He was a non-examiner, and in this case, there's not even any evidence that he, it appears that the entire evaluation that he signed off on was actually completed by a non-psychologist, a non-physician, somebody named Ryan Earp, with no known medical qualifications. He signed it at the end, and then there's a rubber stamp signature after that. So in light of that and the fact that the evaluation by Mr. Earp signed by Dr. Robinson does not mention Dr. Wheeler's evaluation or clinical findings, and it was done before Dr. Kruger's evaluation, it's entitled to very little weight. It's not consistent with the medical evidence. It doesn't discuss the other medical evidence. It's based on Dr. Brooks' report by itself, but it's the least, obviously the least persuasive evidence in this record. Finally, there was also a similar issue with his physical problems. Craig had to have two hip replacements, and there was a non-examiner who didn't understand that that was going to be happening in the future, and he thought, oh, he could stand six hours and walk six hours. He's got very few limitations. That's obviously off base. He needed two hip replacements. It is a fact that after the hip replacements, he did do better. He did start to get quite a bit more physically active, but that didn't last, and he got worse over time. However, the mental limitations here by themselves are the reason that he should be found disabled or should have been found disabled, and you should find error in the ALJ's decision based on her failure to credit those evaluations by Dr. Wheeler and Dr. Kruger without giving any legitimate reason for discrediting them. Finally, I want to address the credibility. There's an issue in this case regarding work activity, and it's in my brief, but basically the ALJ misunderstood a report in Dr. Burke's evaluation and then went with it over and over and over again, claiming that he had worked when the work that was being described had been done perhaps eight or ten years ago. There's no evidence. I thought there was at least one notation where somebody said he's back to work now, and you just say, well, that was a mistake, but you have no evidence that it was a mistake. The only evidence you have that it was a mistake is that he says he wasn't working, but as to whether he told this woman that he was, you have no evidence at all. It was a physician assistant, and a physician assistant got his notes wrong somehow, maybe by fact. I know that, but what's your evidence that she got her notes wrong? Well, we don't have any, but the fact is that people write notes, treatment notes. Nobody sees these things until you end up at a hearing. I understand that, but if the ALJ sees this thing on a piece of paper, and I mean, on one level, the whole enterprise is peculiar because you don't have the actual witnesses, you just have a piece of paper, but it is there in the piece of paper that he said this, and there's no basis for thinking he didn't say it, so there's some evidence that he said it. It's on a piece of paper, and therefore some evidence that it's so. I can't explain that. My best explanation that I've come up with from talking to Craig is that he never said that. He was back to doing stuff. He was back to living his life. Can you testify that he never said that? I'm not, I can't tell you for sure if he testified that he never said that, if that came up in that respect, but he... I mean, certainly what you're saying is perfectly possible. It could have been a mistake. All And I do have to add that, once again, that says nothing about the mental health problems, and that's the best explanation I have, is that it was a misunderstanding. He was back to doing stuff, and he was, because he went and played six holes of golf. He was doing a lot better, but I don't know, I have no idea why a physician's assistant wrote he was back to work, because he wasn't working. I'd like to reserve the rest of my time. Thank you very much. Good morning. May it please the Court, Jeff Staples on behalf of the Commissioner, who asks that you affirm the District Court's judgment because the ALJ's decision was supported by substantial evidence and free of legal error. Turning first to the issue of Craig's work after he alleged that he was unable to work, as your Honor pointed out, the question is not, can the Court come up with an explanation that would undermine the ALJ's finding. Under substantial evidence, the question is, was the ALJ reasonable in looking at these treatment records showing that Craig was... Well, there's only the one, right? No, there was another one before his hip surgery where he said he had been working for the two years leading up to the surgery, and then following the surgery a few months later in July 2009... Which ones were that? At page 368, he said he had been having pain over the last two years. He had worked in the lumber industry for some of that time, but by March of 2009, he was unable to continue that, so he got the hip surgery. Then a few months later, he went back to work. The ALJ was entitled to rely on this evidence in finding that Craig was not credible about the extent of his limitations. Can you talk about the mental health limitations? Certainly. I think it's also true that Craig's work activity bears on his physical and mental limitations. So the fact that he was able to work both before and after his hip surgery, the fact is that it was his hip surgery that took him out of the workforce, not mental limitations. Moreover, back in 2000, when he originally alleged disability, it was the fact that he lost his commercial driver's license that led to the end of his work, not any mental or physical limitations. So I think those facts all do speak to his mental limitations, whatever they may be. Let's talk about the various doctors, because there were a number of them. Certainly. I'm trying to also square why the ALJ, or whether the reasons that the ALJ gave to reject Dr. Wheeler and Dr. Krueger, or to favor Dr. Burke and Dr. Robertson over Dr. Wheeler and Dr. Krueger, whether that really is supported. Yes, Your Honor, and I think it's important to recognize that this is a case in which there's some examining and non-examining opinions that supported the ALJ's findings, and some that the ALJ rejected. So the ALJ is tasked with resolving these conflicts, and did so reasonably in this case. The ALJ found that the opinions of Drs. Wheeler and Krueger were not supported by the objective testing that they had conducted. I'm having trouble understanding that, because it seems like it was the same objective testing that the other doctors gave, and I think under our law that he has to give specific and legitimate reasons, and I'm not sure that that's a specific and legitimate reason when that, what he said in support of Dr. Burke and Dr. Robertson equally applies to the other two doctors. Well, the difference, Your Honor, was that Drs. Wheeler and Krueger, while they also conducted mental status examinations, the results of those were largely normal, and so that did not support... I'm not sure that that's true. Dr. Wheeler, who was in examining, her finding was major depression, severe and marked limitations, and there was a notation in there that says this is the worst case, you know, in terms of major depression that she'd seen in a long time, I think was the exact quote. Yes, something like that. Yeah, that's a pretty significant statement when you look at her exam and you look at Dr. Krueger, who was also an examining physician. He also identified major depression with marked limitations, and the ALJ gave, you know, some weight but little to the limitations, where the ALJ gave significant weight to Dr. Burke and to Dr. Robertson, and then you have the problems with, I think, Dr. Robertson's in that he really wasn't the examining person. Apparently, he handed off that part to somebody else. That's correct. Dr. Robertson was not an examining. Is it correct that he didn't actually have all the records of the examiners? Or is it clear that he did? His opinion, I can't recall exactly when his opinion was, but it was not from the end of the period, so there were certainly records from after Dr. Robertson issued his opinion. But I thought, at least it was said that it isn't even clear that Robertson had Dr. Wheeler's report. Whether he discussed all of the opinions of record in forming his own opinion doesn't necessarily say that he didn't have those, but... It doesn't necessarily say he did either. No, it doesn't. Nevertheless, Dr.... If somebody is reviewing records, you should at least know what records he's reviewing to evaluate whether you should listen to him. Yes, I agree. However, in this case, Dr. Robertson's opinion was supported by Dr. Burke's opinion as an examining physician, and under this court's precedent, when a, excuse me, psychologist, when a... But I think what Judge McKee is asking you is this, as far as I can tell, Dr. Burke, Dr. Kruger, and Dr. Wheeler did basically the same thing. They met this guy, they talked to him, they filled out this mental status report, essentially the same thing, they did some cognitive testing in the course of it, they described what he looked like and how he talked and so on. So, it is true that the ALJ ended up having to choose between them, but he purported to choose between them on the basis that they'd done different things, but they didn't, they did the same thing. Well that's not quite the case. The ALJ found that the objective evidence did not support the marked limitations that Drs. Wheeler and Kruger assessed. That was the difference. I thought, but what he said was that they didn't do objective. I mean, as I understand, the objective evidence was very specific reports of how he looked and how he talked and whether he looked at them and whether he was rigid and whether, what his body language was and things that purported to be a report as to something about his mental status. So, the ALJ, and I'm on page 24 here, the ALJ did discuss all of the objective findings that Dr. Wheeler made. So, it's not like the ALJ was simply unaware that Dr. Wheeler and Dr. Kruger had done objective. What the ALJ found was that the results of those examinations did not support the extreme limitations that they assessed, but it did support the relatively mild limitations that Dr. Burke assessed. So, that was why the ALJ found that their marked limitations were based on the claimant's objective complaints. I guess that's true, but there seems to be a couple issues there. One, because I'm not sure that Dr. Wheeler's examination didn't support the severe limitations based on what Dr. Wheeler wrote down, that Mr. Craig had the blunted affect and dysphoric mood and noted several objective observations regarding Mr. Craig's appearance and such, but then this additional statement that based on her observation and her testing, he was one of the most severely depressed individuals she'd seen in a long time. But, the problem that I haven't heard yet a response to is why those reports and the results of those reports of Dr. Wheeler and Dr. Kruger were given the little weight based on the similar nature of those examinations than those of Burke and Robinson when those were given significant weight. I'm having trouble squaring that up. Okay, so, let's say Drs. Wheeler, Kruger, and Burke all conduct essentially similar mental status examinations. The objective findings are essentially the same. Let's say that. I'm just trying to answer your question here. But, two of the doctors find that that And, the ALJ looked at that and said, well, I find that these same findings do not support the market limitations. And so, those market limitations came from the claimant's own subjective reports, not from the objective findings. If that better answer your question. Yeah, but I'm not sure that's what the ALJ said. I know that's a possibility, but I'm not sure. Dr. Wheeler's findings were not just market. They were severe and market limitations. Well, there's a difference between Dr. Wheeler's findings and Dr. Wheeler's, if I could distinguish between Dr. Wheeler's findings, that being the mental status examination, and her assessment of limitations. So, the objective evidence was the mental status examination, and that was consistent. But, what differed was what opinion can we draw from this. And so, the ALJ found that those objective findings, and he says that it did not support the limitations that they assessed. It didn't, that objective evidence didn't take, couldn't take the opinion all the way to the extreme market. I'm sorry. Counsel, I have a question about, I have a question about if, do you have the page 262 in front of you, which is part of Dr. Wheeler's, it's page two of the psychological evaluation from Dr. Wheeler. And, what I'm trying to understand is whether you consider this page to be part of the objective or the subjective. And, the same is true with page 263. And, the reason I'm asking you is, if this is part of the objective portion, there are severe limitations that are noted here on both of these pages. And so, I'm trying to understand your position as to whether those are objective or whether that's the subjective portion. I see my time is up. Can I just answer your question? So, I'm sorry if I'm muddying things, but the, those pages that your honor is referring to, that is the opinion, the, that's Dr. Wheeler's opinion about what the objective evidence suggests as far as limitations go. So, these are Dr. Wheeler's assessment of how the objective evidence could be translated into functional limitations. So, the objective evidence is several pages later at the mental status examination. And, the ALJ reasonably concluded, based on these conflicting reports, that the relatively mild objective evidence, that being the mental status examination, did not support the assessment that Dr. Wheeler made. And so, if you look at what Dr. Wheeler is talking about as she's describing the basis for her opinion, she says, unable to problem solve well, things like that. But, that's not from her. Counsel, would you look at page 266? Is that one of the ones that you consider to be part of the objective observations in the exam? 266. Yes, this is it. Right. I'm looking in particular at the activities of daily living, where almost any activity of daily living is a marked impairment. Do you consider that part of the objective? No, your honor. I apologize. I was looking at the top of the page. The activities of daily living, this is only what Craig reported to Dr. Wheeler. There's no way for Dr. Wheeler to know any of this objectively. This is just what he told her. Maybe other than hygiene and grooming, which she could observe, but things like, can't walk enough to go into a store. She's not with him at a store. That's not an objective finding. That's just what he's telling her. Can't walk far. It's difficult to take the bus. These are things that Dr. Wheeler could only have ascertained from Craig's own statements about the effect of his limitations. Looking at all of this evidence, it was reasonable for the ALJ to conclude that Dr. Wheeler's assessment of marked limitations was based more on Craig's- In describing her observations on page 2623, for example, she says that most of the hour he fought tears. His eyes were downcast. His averted eye contact. He was tearful. His affect was blunted. He said, unusually still. Motor retardation. His voice was low. He expressed considerable hopelessness, et cetera. I don't know what one does in a situation like this assessing depression other than that sort of thing. What else do you do? That's a fair point. The fact that- That's objective in the sense that she saw it with her own eyes. She saw those things with her own eyes. Then the question becomes, was those mere observations sufficient to support the market and extreme limitations she described? Say that about the other doctors, too. You could say that about the other doctors. Those are mere observations, too, because you're not focusing on any of the- I don't know what you would consider the objective findings versus the subject- Everything you've said here has been based on subjective findings. That's not to say that she didn't make objective findings. That's just to say that the limitations she assessed were in excess of what those findings supported. I think your honor is really onto something here that the one doctor concluded one thing based on these findings and one doctor concluded something else. This court is tasked with conducting a substantial evidence review of the ALJ's decision. When the evidence can support either outcome, certainly- Here you have a couple of examining physicians versus one kind of examining physician versus a non-examining physician who basically did the same test but came out with pretty different findings. I'm not sure that the ALJ's reasons were reasonable in rejecting a couple over the other when the tests appear to be based on the same type. Okay, your time is up. Thank you very much for bearing with us. We will give you one minute in rebuttal or one minute and 16 seconds in rebuttal, actually. First, Judge Graber, with regard to your question about pages 262 and 63, what's important to you is the check marks. The check marks are the ratings, the functional, the summary conclusions and opinion, but it's the comments, the handwritten comments that flesh that out. The handwritten comments are mostly, you can tell by reading them, some of them are his reports but most of them here are objective observations or her findings. Those are the clinical findings that support her opinion. Once again, the problem is that the ALJ didn't explain why. There's an inconsistency there where she said it wasn't supported by evidence but she didn't mention all these findings that do support it. With regard to the question of did we address the work activity, we didn't. I didn't catch it. I should have. I did this hearing. He testified that he had never worked. He had not worked since prior to his hip replacements. Even that comment that was cited from Dr. Halpin, that was in March of 2009. The alleged onset date here is July of 2008. There's no evidence that he worked since July of 2008. Finally, it's important to note that there's three psychological evaluations here and each has its own observations and clinical findings. They're not all identical. Two of them said one thing, one said something. The question is what is an ALJ supposed to do? I mean, suppose we were reversing saying that your reasons don't stand up. Nonetheless, he is faced with two people saying one thing and another person saying another thing. All of them seem to have done basically the same thing, although at different times. One possible explanation is that the different results was because it was different times, different time periods. What does he do next? The simple explanation of what an ALJ is supposed to do is if they have conflicting evidence and they want to give more weight to one evaluation than to another evidence, they have to explain why they're rejecting the other evidence. They have to give reasons that are legitimate. That's why I began my hypothetical with let's assume that his reasons aren't too persuasive because he said that the other two didn't do objective studies and they all seem to have done the same thing. All right, so now he has three people who all seem to have done the same essential thing, which is talk to the guy, make observations about how he looks and acts through this mental status report. They all have basically the same reports about what he said about himself. He said he was very depressed. He said he was very sad. They agreed he was very sad. He had a lousy life. He was miserable about it. They all agreed to that. They came out with somewhat different bottom lines. What is the ALJ supposed to do? What's a good reason, I guess, is my question. If he's supposed to choose between them, what would be a good reason for choosing between them? Well, an ALJ is required by regulation to weigh whether or not medical opinions are consistent with clinical objective findings. Dr. Wheeler's opinion is fully supported by her clinical findings, as is Dr. Kruger's. Okay. Is Dr. Burke's not? Dr. Burke actually wasn't that far off from the others. That's right, he wasn't, but his bottom line was different, no? His bottom line, he was more hopeful. He thought that he would need some adjustment to get to a point where he'd be able to work. There's no suspicion of the presence of major mental illness that could contribute to the development of this kind of discomfort. No, once again, that's the... He had some difficulty, at least in the beginning. That is the job of the trier of fact, and the trier of fact here didn't fulfill her duty to actually fully weigh it and explain the basis of her decision. She didn't explain why... She didn't give a reasonable, legitimate explanation for why she was rejecting these two and giving more weight to the third one. It just doesn't add up. Okay. All right. Thank you very much. We will submit the case of Craig versus Colvin.
judges: Graber, Berzon, Murguia